**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang**

Case No. 26-cv-01972-NYW

WALTER TORRES GONZALEZ,

      Petitioner,

v.

JUAN BALTAZAR, in his official capacity,
GEORGE VALDEZ,[1] in his official capacity,
TODD LYONS, in his official capacity,
MARKWAYNE MULLIN, in his official capacity,
TODD BLANCHE, in his official capacity,
U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,
EXECUTIVE OFFICE OF IMMIGRATION REVIEW, and
DEPARTMENT OF HOMELAND SECURITY,

      Respondents.

_____

### MEMORANDUM OPINION AND ORDER
_____

This matter is before the Court on the Petition for Writ of Habeas Corpus 28 U.S.C. § 2241 (the "Petition"). [Doc. 1]. Respondents have responded to the Petition, [Doc. 9], and Petitioner has filed a reply, [Doc. 10]. For the reasons set forth in this Order, the Petition is **GRANTED in part**.

### BACKGROUND

Petitioner Walter Torres Gonzalez ("Petitioner" or "Mr. Torres Gonzalez") is a citizen of Cuba who entered the United States in 2023. [Doc. 1 at ¶¶ 1, 7]. He was granted humanitarian parole and was authorized to enter and reside in the United States through

---

[1] Mr. Valdez is automatically substituted for Ms. Walker pursuant to Federal Rule of Civil Procedure 25(d). *See also* [Doc. 9 at 1 n.2].

March 12, 2025.  [*Id.* at ¶ 7; Doc. 1-1 at 3].  In 2024, he timely filed a I-485 application for adjustment of status under the Cuban Adjustment Act (the "CAA"), and that application remains pending.  [Doc. 1 at ¶¶ 1–2].

On December 3, 2025, Mr. Torres Gonzalez was taken into ICE custody during a routine traffic stop and has been detained since.  [*Id.* at ¶¶ 2, 5].  While in detention, Mr. Torres Gonzalez moved to terminate his removal proceedings so that he could proceed to adjust his status under the CAA, and on February 5, 2026, an immigration judge granted his motion.  [*Id.* at ¶ 3; Doc. 1-1 at 12–13].  DHS then moved the immigration judge to reconsider her decision to terminate removal proceedings, which was denied on February 15, 2026.  [Doc. 1-1 at 10–11; Doc. 9-1 at ¶¶ 17–18].  In the order, the immigration judge first remarked that DHS did not oppose Mr. Torres Gonzalez's motion to terminate.  [Doc. 1-1 at 10–11].  The court then noted that Mr. Torres Gonzalez proved that he is prima facie eligible for adjustment of status under the CAA and has no criminal history.  [*Id.* at 10].  Indeed, the immigration judge found that Mr. Torres Gonzalez is "likely to be granted adjustment of status."  [*Id.*].  The court made this finding despite the pause in adjudications of benefit applications for Cuban nationals, reasoning that "that pause does not foreclose an individual from applying for relief that remains statutorily available." [*Id.*].  The court observed that "[it] would take an act of Congress to repeal the CAA, which has not happened," and "[t]o ask the Court to proceed forward with removal and foreclose statutorily available relief, where someone has demonstrated prima facie eligibility for it, is entirely inappropriate under the law."  [*Id.* at 11].  On March 8, 2026, DHS appealed the immigration judge's denial of the motion to reconsider to the Board of immigration Appeals.  [Doc. 9-1 at ¶ 19].

2

Presently, Mr. Torres Gonzalez continues to be detained by ICE at the Denver Contract Detention Facility in Aurora, Colorado, [Doc. 1 at ¶ 5], and he has not been provided a bond hearing or an individualized custody determination, [*id.* at ¶ 8]; *see also* [*id.* at 14–15]. He contends that Respondents are improperly detaining him under 8 U.S.C. § 1225(b). [*Id.* at ¶ 14]; *see also* [Doc. 9 at 6 (Respondents arguing that "Petitioner is subject to mandatory detention under § 1225(b)" (emphasis omitted))]. Mr. Torres Gonzalez argues that to the extent his detention is lawful, it is governed by 8 U.S.C. § 1226(a), which requires that he be given a bond hearing. [Doc. 1 at ¶¶ 14, 39–41]; *see also* [*id.* at 14–15, 23–26]. But Petitioner asserts that Respondents have no authority to detain him at this moment, because he is lawfully present in the United States due to his pending application for adjustment of status pursuant to the Cuban Adjustment Act. [*Id.* at 16–19]. Mr. Torres Gonzalez also argues that he was detained without legal authorization, i.e. without any removal proceedings or arrest warrant. [*Id.* at 26–27].

Mr. Torres Gonzalez asserts four claims for relief: (1) "denial of custody redetermination based on legal error," i.e. that Respondents are improperly detaining him pursuant to 8 U.S.C. § 1225(b), [*id.* at 28 (emphasis omitted)]; (2) "mandatory detention based on legal error," i.e. that Respondents are improperly detaining him despite him being lawfully present in the United States while his application for adjustment of status is pending, [*id.* (emphasis omitted)]; (3) "violation of the Fifth Amendment of the United States Constitution," [*id.* at 28–29 (emphasis omitted)]; and (4) "mandatory detention without lawful authorization," [*id.* at 29 (emphasis omitted)]. He asks the Court to order Respondents to "release [him] from custody." [*Id.*]. In the alternative, he asks the Court to order Respondents to provide him a bond hearing consistent with Section 1226(a).

[*Id.*].  He also asks the Court to award him costs and attorneys' fees under the Equal Access to Justice Act and 28 U.S.C. § 2412.  [*Id.*].

## LEGAL STANDARD

Section 2241 of Title 28 authorizes a court to issue a writ of habeas corpus when a person is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  "Challenges to immigration detention are properly brought directly through habeas."  *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001)).

## ANALYSIS

The Court begins with Mr. Torres Gonzalez's argument that he is being detained without lawful authorization, because it finds it to be dispositive.

It is undisputed that while Mr. Torres Gonzalez was paroled into the United States, he timely applied for adjustment of status based on the CAA and that application remains pending.  *See* [Doc. 9 at 3; Doc. 9-1 at ¶¶ 5–7 (declaration of the Deportation Officer assigned to Petitioner's case acknowledging that about one year after being paroled into the United States, and well before the expiration of his parole, Mr. Torres Gonzalez applied to adjust status pursuant to the CAA, which has not yet been adjudicated given Presidential Proclamation 10949)].

"United States immigration law and policy afford special treatment to Cuban nationals who come to the United States."  *United States v. Dominguez*, 661 F.3d 1051,

1067 (11th Cir. 2011).  Under the CAA, "Cuban nationals who were admitted or paroled into the United States" may apply "to become lawful permanent residents after being [in the United States] for more than a year."  *Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 56 (D.D.C. 2025) (citing Cuban Adjustment Act of 1966, 89 Pub. L. 732, 80 Stat. 1161).  "By taking advantage of the CAA, Cuban nationals, who have no documents authorizing their presence in the United States, *can remain in the United States* without demonstrating that they suffered persecution or proving refugee status." *Dominguez*, 661 F.3d at 1067 (emphasis added).  Indeed, the immigration judge in this case denied the Government's motion to reconsider her order terminating Mr. Torres Gonzalez's removal proceedings precisely for this reason.  *See* [Doc. 1-1 at 10–11 (ruling that "ask[ing] the Court to proceed forward with removal and foreclose statutorily available relief, where someone has demonstrated prima facie eligibility for it, is entirely inappropriate under the law," "particularly where an alien cannot seek adjustment of status under the CAA from outside of the United States")].

Respondents do not address the CAA in their Response beyond noting that a Presidential Proclamation has "suspended adjustments of status like those Petitioner has requested." [Doc. 9 at 3].  Instead, their Response focuses solely on whether Petitioner's detention is authorized by 8 U.S.C. § 1225(b)(2) or § 1226(a).  *See generally* [*id.*].[2]  But Respondents do not explain how either § 1225 or § 1226 provide Respondents with the authority to detain Mr. Torres Gonzalez here, where he has properly applied for

---

[2] Even if Petitioner was properly detained and placed in removal proceedings, he would be subject to the discretionary detention provided for in § 1226(a) because he resided in the United States for years and was apprehended inside the United States.  *See Santillan Quiroz v. Mullin*, --- F.4th ----, 2026 WL 1876709, at *7–8 (10th Cir. June 30, 2026).

adjustment of status under the CAA and was found by an immigration judge to be prima facie eligible for that relief.  In addition, there is no indication that Mr. Torres Gonzalez is subject to any type of warrant for his arrest.  *See* [Doc. 9]; *Quezada-Estrada v. Lyons*, No. 26-cv-01599-NYW, 2026 WL 1361880, at *4–6 (D. Colo. May 15, 2026) (discussing the warrant requirements for arrest and detention of noncitizens).

As other courts in this District have found,

> both the design of the CAA and its interplay with other provisions of immigration law support the conclusion that because 'Congress intended that Petitioner have an opportunity to pursue lawful permanent residence in the United States' as a Cuban national, pursuing Petitioner's removal before his I-485 application is adjudicated 'summarily strip[s]' Petitioner of the benefits Congress intended that individuals like him receive.

*Concha-Gonzalez v. Noem*, No. 26-cv-00001-CNS, 2026 WL 194178, at *4 (D. Colo. Jan. 26, 2026) (quoting *Alfaro Herrera v. Baltazar*, No. 25-cv-04014-CNS, 2026 WL 91470, at *7 (D. Colo. Jan. 13, 2026) (in turn quoting *Osorio-Martinez v. Att'y Gen. United States of Am.*, 893 F.3d 153, 163 (3d Cir. 2018))); *Lopez Ricardo v. Baltazar*, No. 26-cv-01099-SKC, 2026 WL 1773215, at *2 (D. Colo. Apr. 17, 2026) (same), *appeal docketed*, No. 26-1231 (10th Cir. June 16, 2026).

"Respondents' attempt to revive Petitioner's removal proceedings and, in effect, prevent him from applying for an adjustment of status under the CAA is thus improper." *Alonso v. Baltasar*, No. 26-cv-01365-CNS, 2026 WL 1194783, at *3 (D. Colo. May 1, 2026); *see also Succar v. Ashcroft*, 394 F.3d 8, 27 n.25 (1st Cir. 2005) (acknowledging that "where Congress has wanted to benefit aliens from certain countries, it has enacted special legislation which allows these individuals to enter the United States and apply for permanent resident status . . . *without being subjected to removal proceedings*" and explicitly citing the CAA as an example of such legislation (emphasis added)).

Because Respondents fail to provide a legitimate explanation for Mr. Torres Gonzalez's detention or the initiation of his removal proceedings, the proper remedy is immediate release.  The Petition is therefore **GRANTED in part**.[3]

## CONCLUSION

For the reasons set forth in this Order, **IT IS ORDERED** that:

(1)    The Petition for Writ of Habeas Corpus 28 U.S.C. § 2241 [Doc. 1] is **GRANTED in part** as set forth herein;

(2)    Respondents **SHALL RELEASE** Petitioner from custody within **48 hours**; and

(3)    On or before **July 23, 2026**, the Parties shall file a joint status report confirming that Petitioner was released.

DATED:  July 16, 2026                                BY THE COURT:

Nina Y. Wang
United States District Judge

---

[3] Petitioner also seeks attorney's fees and costs under the Equal Access to Justice Act. [Doc. 1 at 29]; *see also Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025).  But this District's Local Rules require that those requests be made by separate motion.  *See* D.C.Colo.LCivR 54.3.  A fee award is thus inappropriate at this juncture.